NOAH BARISH, Bar No. 105847
MCKANNA BISHOP JOFFE LLP
1635 NW Johnson Street
Portland, OR 97209
Phone: 503-821-0960
Fax: 503-226-6121
Email: nbarish@mbjlaw.com

*CAREN P. SENCER, Cal. State, Bar No. 233488
*(PRO HAC VICE ADMISSION PENDING)*
*MATTHEW J. ERLE, Cal. State, Bar No. 333371
*(PRO HAC VICE ADMISSION PENDING)*
WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1375 55th Street
Emeryville, California 94608
Telephone: (510) 337-1001
Fax: (510) 337-1023
E-Mail: csencer@unioncounsel.net
         merle@unioncounsel.net

Attorneys for Petitioner
Teamsters Local Union No. 206

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| TEAMSTERS LOCAL UNION NO. 206, | Case No.: |
| Petitioner, | |
| v. | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION TO COMPEL ARBITRATION |
| MONDELÉZ GLOBAL, LLC, | |
| Respondent. | |

Page 1 – MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION TO COMPEL ARBITRATION

I.     **INTRODUCTION**

Petitioner TEAMSTERS LOCAL UNION NO. 206, ("Petitioner" or "Union") seeks an order compelling Respondent, MONDELÉZ GLOBAL, LLC ("Mondelez" or "Respondent") to participate in an arbitration to resolve a grievance in compliance with the terms of the collective bargaining agreement (CBA) it entered into with Union. Petitioner seeks to compel arbitration after Respondent not only refused to arbitrate a grievance contending that Respondent outsourced bargaining unit work normally performed by Petitioner's members at the Portland, Oregon bakery to another facility in Portland, but also threatened Petitioner with legal action for pursuing the grievance to arbitration.

Petitioner's members handle finished snack foods at Respondent's Portland bakery including palletizing, loading, and preparing products for shipment. Pursuant to Article 1 of the CBA, Respondent "recognizes the Union as the sole collective bargaining agent for the employees in job classifications covered by" the CBA and has agreed that "[o]nly bargaining unit employees will do bargaining unit work" with limited exceptions. In 2022, without giving Petitioner notice, Respondent opened a "fulfillment center" in the same city of Portland, Oregon. On May 19, 2023, Petitioner filed a grievance alleging that Respondent is using the new facility to perform bargaining unit work, so the opening and/or use of the new facility without using bargaining unit employees violates various provisions of the CBA.  Respondent contended that the work at the Portland fulfillment center is not covered by the CBA, refused to arbitrate, and threatened retaliatory litigation.

Respondent is signatory and bound to the CBA, which requires the submission of a "grievance or dispute" that cannot be settled informally to arbitration. Respondent is disputing the application of the CBA and the merits of the grievance. These disputes must be submitted to arbitration.

There is no basis for Respondent to refuse to arbitrate under the broad terms of the CBA. Respondent's position is unjustified, so Union is entitled to an award of attorneys' fees and costs to be determined in a separate motion for attorneys' fees.

## II.  STATEMENT OF FACTS

Petitioner is a labor organization with its main place of business in Portland, Oregon. Respondent's principal place of business is in Chicago, Illinois and operates facilities in multiple locations, including Portland.

Respondent is an employer within the meaning of the Labor-Management Relations Act of 1947, 29 U.S.C. §§ 141-187. Respondent employs members of Petitioner at its bakery in Portland, Oregon. *See* Petition To Compel Arbitration, Exhibit A (hereinafter "Exhibit A").

### A.  RESPONDENT IS SIGNATORY TO THE CBA WHICH REQUIRES ARBITRATION OF DISPUTES OVER ITS APPLICATION

Respondent is signatory and bound to a collective bargaining agreement ("CBA") with Petitioner. On June 7, 2021, Respondent, by and through its agent, Tanya Peterson, executed the CBA. Exhibit A, at 16.

Article 17 of the CBA provides for mandatory arbitration. Article 17 permits grievances to be filed "within ten (10) days after the occurrence *or knowledge* of the dispute" and then sets forth steps for resolution. Exhibit A, at 13 (emphasis added). Subdivisions (a) and (b) set forth initial, informal steps. If those steps do not lead to a satisfactory resolution of the dispute, "either party may, within thirty (30) days, give written notice to the other party of its desire to arbitrate the dispute." *Id.* Article 17 then sets forth a procedure for selecting "a mutually satisfactory arbitrator who shall properly arbitrate the dispute." *Id.* "The decision of the arbitrator shall be final and binding upon the parties hereto." *Id.*

In sum, Article 17 permits either party to submit any grievance or dispute to an arbitrator who *shall* preside over the arbitration.

Page 3 –  MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION TO COMPEL ARBITRATION

B.  **THE UNDERLYING GRIEVANCE**

Petitioner represents employees of Respondent pursuant to the CBA. The CBA contains strong protections for work performed by members of this bargaining unit. This work was previously performed at the primary facility in Portland, Oregon. In 2022, without providing notice to the Union, Respondent began operating out of a fulfillment center that is also located in Portland, Oregon and apparently engaged an employment agency to staff that center. *See* Petition To Compel Arbitration, Exhibit B at 5 (hereinafter "Exhibit B").

On May 19, 2023, after learning of the opening of the fulfillment center, the Union filed a grievance alleging that Respondent is using the new facility to perform bargaining unit work, so the opening and/or use of the new facility violates various provisions of the CBA, including Articles 1, 8, 16, and 20. Exhibit B at 1-3. In Article 1, Respondent "recognizes the Union as the sole bargaining agent for the employees employed in job classifications covered by" and agreed that "[o]nly bargaining unit employees will do bargaining unit work" with limited exceptions for emergencies, training, and the like. Exhibit A at 2. That article also provides for union security. *Id.* Article 8 requires Respondent to use seniority to govern matters including layoffs, promotions, overtime assignments, choice of vacation, and more. *Id.* at 8. Article 16 requires Respondent to pay all Employment Agency fees and pay CBA level benefits to anyone performing bargaining unit work. Exhibit A at 12-13. Article 20 forbids other agreements with covered employees that in any way conflicts with the CBA. *Id.* at 14.

C.  **RESPONDENT REFUSED PETITIONER'S DEMAND TO ARBITRATE AND THREATENED LITIGATION IN RETALIATION**

Initially, Respondent complied with the grievance and arbitration provisions of the CBA by providing a written response to the grievance. Respondent denied the grievance and contended that the work performed at the fulfillment center is not bargaining unit work, is not covered by the CBA, and that the grievance was untimely. Exhibit B at 4. On June 16, 2023, Petitioner proceeded to the arbitration step of the grievance procedure. Exhibit B at 7. Petitioner gave notice of intent to arbitrate within 30 days of the grievance as required by the contractual

grievance procedure. *See* Exhibit A at 13. In a June 23, 2023 response, Respondent repeated its same defenses to the grievance and, for the first time, claimed that the grievance is not arbitrable and threatened to file suit against Petitioner should it continue to seek arbitration of the grievance. Exhibit B at 8.

### III. ARGUMENT

**A.    ARBITRATION IS COMPELLED UNDER FEDERAL LAW**

    **1.    Federal Labor Law Requires Arbitration**

Federal law generally requires the submission of disputes over the interpretation and application of labor agreements to arbitration. *United Steelworkers of Am. V. Am. Mfg. Co.*, 363 U.S. 564 (1960); *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960); *Int'l Union of Operating Eng's, Local 150, Locs. 197, 373, 428, 588, 775, 839, 870, 1119, 1179 & 1532, by United Food & Com. Workers Int'l Union, AFL-CIO v. Flair Builders, Inc.*, 406 U.S. 487, 491-92 (1972); *see also United Food & Comm. Workers Union, etc. v. Alpha Beta Co.*, 736 F.2d 1371, 1374 (9th Cir. 1984) (national labor policy favors informal resolution of labor disputes through arbitration); 29 U.S.C. § 173(d) ("Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement.")

"Normally, the inclusion of an arbitration clause in a collective bargaining agreement creates a 'presumption of arbitrability' as to disputes that arise between the parties to that agreement." *Interstate Brands Corp. v. Bakery Drivers & Bakery Good Vending Machines, Local Union No. 550, Int'l Bhd. Of Teamsters*, 167 F.3d 764, 767 (2d Cir. 1999), citing *AT&T Technologies, Inc. v. Communication Workers*, 475 U.S. 643, 650 (1986). "The presumption is particularly potent if the arbitration clause is broad." *Dennis L. Christensen Gen. Bldg. Contractor, Inc. v. General Building Contractor, Inc.*, 952 F.2d 1073, 1077 (9th Cir. 1991), as amended on denial of reh'g (Dec. 18, 1991). A clause such as the one found in the Agreement, requiring that "[a]ll grievances … will be handled as follows," giving either party the right to

Page 5 – MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION TO COMPEL ARBITRATION

submit a "grievance or dispute" to "a mutually satisfactory arbitrator who shall properly arbitrate the dispute" and that "[t]he decision of the arbitrator shall be final and binding upon the parties", *see* Exhibit A, at 13, "is very broad." *Dennis L. Christensen*, 952 F.2d at 1077; *see also United Ass'n of Journeymen and Apprentices of Plumbing & Pipefitting Indus., Loc. No. 577 v. Ross Bros. Construction Co.*, 191 F.3d 714, 718 (6th Cir. 1999) (the phrase "'all complaints, all disputes and all grievances' is 'broad language which is not restricted to disputes involving questions of interpretation or application of any clause or matter covered by the contract' [citation omitted];" *Bakery Drivers*, 167 F.3d at 765, 767-768; *Brotherhood of Teamsters & Auto Truck Drivers Local # 70 v. Interstate Distributor Co.*, 832 F.2d 507, 511 (9th Cir. 1987) (where CBA contains a broad arbitration clause, questions are to resolved by arbitration). Well established federal labor law requires arbitration of the pending grievance.

### 2. **The Federal Arbitration Act Requires Arbitration**

Section 4 of the Federal Arbitration Act ("FAA") provides that a party aggrieved by the failure of another to arbitrate under a written agreement for arbitration may petition the district court "for an order directing that such arbitration proceed in the manner provided in such agreement." The FAA creates "a body of law establishing and regulating the duty to honor an agreement to arbitrate." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 625 (1985). One of the primary purposes of the FAA is to ensure enforcement of private arbitration agreements according to their own terms. *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010).

An arbitration agreement is enforceable under the FAA if it is in writing, relates to a commercial or maritime transaction, and manifests an agreement between the parties to arbitrate a dispute. 9 U.S.C § 1. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). "'An order to arbitrate

Page 6 – MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION TO COMPEL ARBITRATION

the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *AT&T*, *supra*, 475 U.S. at 650 (quoting *Warrior & Gulf Nav. Co.*, 363 U.S. at 582-83).

The FAA "leaves no place for the exercise of discretion" if there is a valid, applicable agreement, and arbitration must be compelled even if some claims are subject to arbitration and some are not and the maintenance of separate proceedings may be inefficient. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217-18 (1985). The FAA's standard for requiring arbitration is satisfied here and the FAA's presumption in favor of honoring the arbitration agreement must be enforced.

**B.   RESPONDENT'S POSITION THAT IT NEED NOT ARBITRATE THE DISPUTE HAS NO MERIT**

Respondent seems to contend that "the grievance is not arbitrable" for several reasons. First, Respondent claims the work performed at its facility is allegedly performed by employees employed by a third party. Second, Respondent contends the work performed is allegedly not bargaining unit work within the meaning of the CBA. These are arguments concerning the interpretation of "bargaining unit work" as defined by the CBA, and the parties bargained for an arbitrator to answer questions regarding the interpretation of the CBA.[1] *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 599 (1960), citing *United Steelworkers*, 363 U.S. 564 ("The question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction that was bargained for."). To the extent these arguments are not about the interpretation of "bargaining unit work," these are arguments about the application of the CBA to the work that Respondent is performing at another of its facilities in the same city. Whether a dispute over interpretation or application, these disputes must be arbitrated. *Nghiem v. NEC Electric*, 25 F.3d 1437, 1440 (9th Cir. 1994) ("any doubts concerning

---

[1] The court may review and apply the CBA but may not engage in interpretation of the CBA. 363 U.S. at 559.

Page 7 – MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION TO COMPEL ARBITRATION

the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."); *Mitsubishi Motors*, 473 U.S. at 626); *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 478 (9th Cir. 1991) (Court's role "is strictly limited to determining arbitrability and enforcing agreements to arbitrate, leaving the merits of the claim and any defenses to the arbitrator. [citations omitted]"); *International Union of Operating Engineers v. Flair Builders, Inc.*, 406 U.S. (487) at 490-92 (1972) (defense of laches is for the arbitrator to decide); *Auto, Marine & Specialty Painters Loc. No. 1176 v. Bay Area Sealers, Inc.*, 577 F.2d 609, 610 (9th Cir. 1978) (defense of repudiation is for the arbitrator to decide).

Respondent also alleges the grievance is untimely. Assuming this forms a basis for its refusal to arbitrate, this argument is equally misplaced. Questions about the timeliness of grievances must be submitted to arbitration. *Goss Golden W. Sheet Metal, Inc. v. Sheet Metal Workers Int'l Union, Loc. 104*, 933 F.2d 759, 764 (9th Cir. 1991) ("time limitations are made an express part of the arbitration agreement; issues in respect to them must be submitted to arbitration.")

C.   AN AWARD OF ATTORNEYS' FEES AND COSTS IS WARRANTED

Respondent's failure to submit this dispute to arbitration is frivolous or in bad faith, so an attorneys' fees and costs award is warranted. In the labor context, "engaging in frivolous dilatory tactics not only denies the individual prompt redress, it threatens the goal of industrial peace." *Int'l Union of Petroleum & Industrial Workers v. Western Industrial Maintenance, Inc.*, 707 F.2d 425, 428 (9th Cir. 1983).  The Ninth Circuit has held that "[an] award of fees is appropriate when a party frivolously or in bad faith refuses to submit a dispute to arbitration..." under a collective bargaining agreement. *Rd. Sprinkler Fitters Loc. Union No. 669, U.A., AFL-CIO v. Cosco Fire Prot., Inc.*, 363 F. Supp. 2d 1220, 1226 (C.D. Cal. 2005) (hereafter "*Local 669*"), citing *United*

*Food & Commercial Workers Union, Locals 197 v. Alpha Beta Co.*, 736 F.2d 1371, 1383 (9th Cir.1984).

In *Local 669*, the court found that the union was entitled to attorney's fees that it incurred while compelling arbitration of a grievance. That grievance alleged that the employer had assigned bargaining unit work to other companies it controlled and failed to advise the union of that fact in violation of the collective bargaining agreement. 363 F. Supp. 2d at 1222; 1226. That employer raised two arguments about why it need not arbitrate the grievance. First, the employer argued the proceeding should be stayed while the National Labor Relations Board finished considering whether the union's demand of arbitration would constitute an unfair labor practice. *Id*. at 1224. Second, that employer argued that the grievance was illegal under the Labor-Management Relations Act, as amended, 29, U.S.C. § 158(e). *Id*. The court found that these defenses to arbitration were not legally sound and "indicate a bad faith intent to delay arbitration" and ruled that the union was entitled to attorney's fees.

As in *Local 669*, the Union here seeks to compel arbitration of a grievance arising out of an employer's alleged assignment of bargaining unit work to employees of another company, and Respondent's arguments indicate a bad faith intent to delay arbitration. Respondent resists arbitration because the collective bargaining agreement "applies only to work performed by certain Mondelez Global LLC employees at the Portland bakery." Exh. B, at 8. As set out above, this is a classic question of interpretation of the terms of the collective bargaining agreement, or its application. Regardless, such disputes must be arbitrated. *Nghiem v. NEC Electric*, 25 F.3d at 1440 (9th Cir. 1994). Respondent is presumably well aware that disputes over an employer's decision to subcontract alleged bargaining unit work is grist for the mill of labor arbitration. *See, e.g.*, *Amalgamated Clothing & Textile Workers Union, AFL-CIO-CLC v. Ratner Corp.*, 602 F.2d 1363 (9th Cir. 1979) (compelling arbitration of a grievance about work allegedly subcontracted by the employer to a nonunion company and finding disputes over both the application of that no-subcontracting clause to the work at issue and whether the subcontracting violated the cause

Page 9 – MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION TO COMPEL ARBITRATION

to be arbitrable); *Warehousemen's Union Loc. No. 206 v. Cont'l Can Co.*, 821 F.2d 1348, 1352 (9th Cir. 1987) (compelling arbitration of dispute over employer's employment of nonunion truck drivers and finding that interpretation of the substantive provisions is for the arbitrator). Next, Respondent alleges that "the grievance is not arbitrable because the underlying purported dispute is raised in the incorrect forum." Exh. B. at 8. As in *Local 669*, the fact that issues *could* be heard in another forum is not a legitimate basis to resist arbitration, and this defense again indicates a bad faith attempt to delay arbitration. Because Respondent raises only bad faith or frivolous grounds to resist arbitration, an award of attorneys' fees and costs is warranted here.

## IV.    CONCLUSION

For the foregoing reasons, Teamsters 206 respectfully requests the Court issue an order compelling Mondelez to meaningfully participate in arbitration of the grievance filed by the Union.

Dated:  August 3, 2023

WEINBERG, ROGER & ROSENFELD
A Professional Corporation

By:    */s/ Matthew J. Erle*
       CAREN P. SENCER
       MATTHEW J. ERLE

Dated:  August 3, 2023

MCKANNA BISHOP JOFFE LLP

*/S/ Noah Barish*
NOAH BARISH

Attorneys for Petitioner
TEAMSTERS LOCAL UNION NO. 206

Page 10 – MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITION TO COMPEL ARBITRATION